IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK SUGGS,<br><br>               Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>               Respondent. | CIVIL ACTION<br>NO. 16-6092<br><br><br><br>CRIMINAL ACTION<br>NO. 14-349-2 |

**OPINION**

**Slomsky, J.**                                                                                                   **November 20, 2018**

**I.     INTRODUCTION**

Before the Court is Petitioner Derrick Suggs' pro se Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging two violations of his Sixth Amendment right to effective assistance of counsel. (Doc. No. 175.)

On April 2, 2015, pursuant to a guilty plea agreement, Petitioner Derrick Suggs pled guilty to the following criminal acts: (1) one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846; and (2) eight counts of distribution of controlled substances and aiding and abetting the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. No. 18.) Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), Petitioner and the Government stipulated to an agreed upon sentence of 120 months' imprisonment, three years supervised release, a fine to be determined by the Court, and a special assessment of $900. (Id.) On July 21, 2015, the Court accepted the parties' recommendation and sentenced Petitioner to 120 months' imprisonment, three years supervised release, and to pay a fine of $2,000 and a special assessment of $900. (Doc. No. 139.) Petitioner did not file a Notice of Appeal.

1

On December 15, 2016, Petitioner filed the instant § 2255 Motion. (Doc. No. 175.) In his Motion, Petitioner first argues that his trial counsel was ineffective for failing to investigate his prior state court convictions.[1] (Id. at 4.) He contends that insufficient evidence supported these convictions, and that if his trial counsel had investigated them and presented his findings to this Court, he would have received a significantly lower sentence in this case. (Id.) Second, Petitioner claims that his trial counsel was ineffective for failing to advise him that the Court was required to inform him that he had a right under 21 U.S.C. § 851(b), a sentencing enhancement provision, to challenge the validity of his state court convictions before sentencing. (Id. at 5.)

On December 19, 2016, the Court ordered the Government to respond to Petitioner's Motion. (Doc. No. 176.) On August 24, 2017, the Government filed a Response in Opposition to the Motion. (Doc. No. 185.) The Court did not hold an evidentiary hearing.[2]

Petitioner's § 2255 Motion is now ripe for decision. For reasons that follow, the Court will deny Petitioner's § 2255 Motion (Doc. No. 175) and will not issue a certificate of appealability.

---

[1] In his Motion, Petitioner repeatedly contends that the Probation Office used his prior state court convictions to calculate his federal sentencing guideline range. (Doc. No. 175 at 4, 5, 11, 13-15.) But according to the Pre-Sentence Report ("PSI"), the Probation Officer only considered one prior state court conviction in determining his Criminal History Category. (Doc. No. 185 at 10.)

[2] A district court is given discretion in deciding whether to hold an evidentiary hearing on a § 2255 motion. See Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). When exercising this discretion, the court must decide whether the claims, if proven, would entitle him to relief and then consider whether an evidentiary hearing is necessary to determine the truth of the allegations. See Gov't of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir. 1994). Here, an evidentiary hearing is not warranted because the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994) (quoting United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992)).

2

## II. BACKGROUND

From March 2011 to October 2012, Petitioner Derrick Suggs and co-conspirators Monica Harrison, Gregory Scales, Asha Webb, and Commarty Ferguson devised and executed a scheme to fill fraudulent Oxycodone prescriptions and then resell the pills on the streets of Philadelphia. (Doc. No. 185 at 3.) In or around March 2011, Monica Harrison, an employee of Dr. William Burch, started filling out prescriptions for Oxycodone using Dr. Burch's prescription pads without his consent. (Id.) When writing out the prescriptions, Harrison used the names and dates of birth of individuals who were not patients of Dr. Burch ("pseudo-patients"). She then delivered the fraudulent prescriptions to the other co-conspirators. (Id. at 3-4.)

Next, the co-conspirators distributed the fraudulent prescriptions to pseudo-patients, provided them with cash to pay for the pills, and drove them to various pharmacies in Philadelphia to fill the prescriptions. (Id. at 4.) When the pharmacists called Dr. Burch's office to verify the prescriptions, Harrison lied to the pharmacists and told them that the prescriptions were valid. (Id.) After filling the prescriptions, the pseudo-patients handed the Oxycodone over to the co-conspirators. (Id.)

The co-conspirators then delivered the Oxycodone to Petitioner Suggs, who then resold the pills on the street for a profit. (Id.) At one point, Harrison was no longer able to access Dr. Burch's prescription pads and the co-conspirators began creating counterfeit prescriptions to give to pseudo-patients. (Id. at 5.) During the conspiracy, over 80 pseudo-patients made over 500 trips to Philadelphia pharmacies and filled prescriptions for approximately 111,540 Oxycodone pills, which Petitioner ultimately sold on the streets. (Id. at 5-6.)

On July 9, 2014, a grand jury in the Eastern District of Pennsylvania returned a superseding indictment charging Petitioner Derrick Suggs, Monica Harrison, Gregory Scales, and Asha Webb with conspiracy to distribute controlled substances in violation of 21 U.S.C. §

3

846; distribution of controlled substances and aiding and abetting the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and acquiring a controlled substance by fraud and aiding and abetting in violation of 21 U.S.C. § 843(a)(3) and 18 U.S.C. § 2. (Doc. No. 1.)

As noted above, on April 2, 2015 Petitioner pled guilty to one count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846 and eight counts of distribution of controlled substances and aiding and abetting the distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (Doc. No. 18.) On July 21, 2015, the Court accepted the parties' sentencing recommendation made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and sentenced Petitioner to 120 months' imprisonment, three years supervised release, and to pay a fine of $2,000 and a special assessment of $900. (Doc. No. 139.) As noted, Petitioner did not file a Notice of Appeal.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may vacate a prisoner's sentence if it finds that the "judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [defendant] as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Section 2255 does not provide habeas petitioners with a panacea for all alleged trial or sentencing errors. United States v. Howard, No. 11-6352, 2013 WL 5924876, at *2 (E.D. Pa. Nov. 5, 2013). Instead, "[h]abeas relief is generally available only to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." United States v. DeLuca, 889 F.2d 503, 506 (3d Cir. 1989).

4

The petitioner bears the burden of proving that his conviction is illegal. United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005). Further, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. See United States v. Cleary, 46 F.3d 307, 310 (3d Cir. 1995) (quoting United States v. Frady, 456 U.S. 152, 166 (1982)).

## IV. ANALYSIS

In the Motion, Petitioner advances two grounds for relief based on ineffective assistance of counsel. First, he argues that his trial counsel was ineffective for failing to investigate his prior state court convictions. (Doc. No. 175 at 4.) He contends that insufficient evidence supported those convictions, and that had his trial counsel discovered this fact through investigation and then presented it to the Court, he would have received a significantly lower sentence. (Id.) Second, he claims that his trial counsel was ineffective for failing to advise him that the Court was required to inform him that he had a right to challenge the validity of his state court convictions before sentencing under 21 U.S.C § 851(b), the sentencing enhancement statute. (Id. at 5.) Both claims lack merit.

Additionally, Petitioner contends that AEDPA's one-year statute of limitations does not bar his § 2255 Motion, despite his having filed it almost six months past the deadline. Specifically, he contends that his actual innocence of his prior state court convictions allows the Court to override the one-year period. (Doc. No. 175 at 12.) For the reasons discussed infra, his claims are unconvincing.

### A. Petitioner's Ineffective Assistance of Counsel Claims Lack Merit

In evaluating a petitioner's claims of ineffective assistance of counsel in violation of the Sixth Amendment, a court must apply the two-prong test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, trial counsel is presumed to have

acted effectively unless Petitioner establishes that: (1) defense counsel's performance was deficient, and (2) the deficient performance prejudiced Petitioner. Id. at 688, 694.

Under the first prong, Petitioner must demonstrate that defense counsel fell short of "reasonably effective assistance" by overcoming the presumption that defense counsel's decisions were "sound trial strategy." Id. at 686. The appropriate measure of attorney performance is reasonableness under prevailing professional norms. Id. There exists a strong presumption that counsel rendered adequate assistance to his client and that all significant decisions were made while exercising reasonable professional judgment. Id.

Under the second prong, Petitioner must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687. In Strickland, the Court explained that a reasonable probability is a probability sufficient to undermine confidence in the ultimate outcome. Id. at 694. Essentially, a petitioner must show that defense counsel's alleged error caused more than just some conceivable effect on the outcome of the proceeding. Id. at 693.

"A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." Id. at 668. Because a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the court's scrutiny of counsel's performance "must be highly deferential." Id. at 689.

### 1. Trial Counsel's Alleged Failure to Investigate Petitioner's State Court Convictions

First, Petitioner contends that his trial counsel was ineffective for failing to investigate the validity of his state court convictions. In particular, he alleges:

> Had counsel conducted said investigation, he would have discovered that counsel in both of the prior state convictions were ineffective because under state law the evidence was insufficient to support them. Had counsel himself undertaken the vacatur of said convictions, they could not have been used to enhance petitioner's federal sentence and he would have received a significantly lower sentence.

(Doc. No. 175 at 4.) Petitioner contends that he was significantly prejudiced by trial counsel's failure to investigate his state court convictions and that but for these "invalid" convictions, he would have been subject to a sentence of 60 to 78 months' imprisonment instead of 120 months. (Id. at 13.) The Court disagrees.

Here, Petitioner pled guilty pursuant to a written plea agreement. Under Federal Rule of Criminal Procedure 11(c)(1)(C), the plea agreement may specify that an attorney for the government will "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does not apply . . . ." Fed. R. Crim. P. 11(c)(1)(C). Using this Rule, Petitioner and the Government stipulated to the following:

> The parties agree that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case: 120 months' imprisonment, 3 years of supervised release, a fine in an amount fixed by the Court, and a $900 special assessment.

(Doc. No. 118 ¶ 4.) Petitioner further agreed to the following stipulation:

> The parties agree and stipulate that, 63,480 10mg Oxycodone tablets, and 46,710 30mg Oxycodone tablets, for a total of 110,190 Oxycodone tablets, were distributed in furtherance of the criminal activity jointly undertaken by the defendant and co-conspirators; this amount was within the scope of the defendant's agreement; this amount was reasonably foreseeable to the defendant in connection with the conspiracy; and the defendant's Guideline range should be calculated based on this amount pursuant to U.S.S.G. § 1B1.3

(Id. ¶ 9a.)

Based on these stipulations, the U.S. Probation Officer calculated Petitioner's base offense level under the federal Sentencing Guidelines. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(3), the Probation Office properly determined that Petitioner's base offense level was 34 because he distributed and aided and abetted the distribution of 110,910 Oxycodone tablets which contained approximately 2036.1 grams of Oxycodone. (Doc. No. 185 at 10.) Because Petitioner was the organizer/leader of a scheme that involved five or more participants, the Probation Officer added four (4) offense levels, resulting in an offense level of 38. (Id.) Finally, under U.S.S.G. § 3E1.1(a), the Probation Officer reduced the offense level by three (3) levels because Petitioner accepted responsibility by pleading guilty. (Id.) As such, Petitioner's total adjusted offense level was 35. (Id.)

The Probation Officer next examined Petitioner's criminal history score to determine his Criminal History Category. Although Petitioner repeatedly claims that the Probation Officer considered multiple prior state court convictions (Doc. No. 175 at 4, 5, 11, 13-15), Petitioner was only given one (1) point for his 2001 conviction for criminal conspiracy in the Court of Common Pleas of Delaware County. (Id.) Accordingly, Criminal History Category I, the lowest category, applied to Petitioner. (Id.) At an offense level of 35 and a Criminal History Category of I, Petitioner's recommended range under the federal Sentencing Guidelines was 168 to 210 months. (Id. at 10.) This was the guideline range found by the Court at sentencing.

Here, Petitioner argues that had his trial counsel discovered that his state court conviction was invalid because it was based on insufficient evidence, he would have fallen into a lower

Criminal History Category, and his sentencing range would have been 60 to 78 months.³ (Doc. No. 175 at 13.) But with a criminal history score of one (1), Petitioner already fell into the lowest Criminal History Category. Even if his state court conviction was invalid and not considered by this Court, he would still remain within Criminal History Category I and be subject to a guideline sentence of 168 to 210 months imprisonment. As such, Petitioner's state court conviction did not enhance his sentence and trial counsel's failure to investigate the conviction did not prejudice him.

In any event, even if the state court conviction was used to enhance Petitioner's federal sentence, Petitioner cannot assert the alleged invalidity of that conviction to challenge his sentence under the § 2255. In Custis v. United States, the Supreme Court held that on direct review "a defendant in a federal sentencing proceeding may [not] collaterally attack the validity of previous state convictions that are used to enhance his sentence." 511 U.S. 485, 487 (1994). Daniels v. United States extended this rule to federal habeas proceedings. 532 U.S. 374, 376 (2001). In Daniels, the petitioner filed a § 2255 motion to vacate his federal sentence, alleging that two of his prior state convictions were unconstitutional because they were based on guilty pleas that were not knowing and voluntary and because one conviction was the product of ineffective assistance of counsel. Id. at 377. The Supreme Court affirmed the lower courts' denial of the motion, holding that "[i]f . . . a prior conviction used to enhance a federal sentence is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so

---

³ Petitioner does not describe how he arrived at the sentencing range of 60 to 78 months. He merely states, without explanation, that "Petitioner was substantially prejudiced as a result of his counsel's omissions because, but for the invalid state convictions, he would have been subject to a sentence of 60-78 months instead of the 120 month sentence he received." (Doc. No. 175 at 13.)

9

unsuccessfully), then that defendant . . . may not collaterally attack his prior conviction through a motion under § 2255." Id. at 382.

Daniels recognized two possible exceptions to this rule. First, "defendants may challenge the prior conviction where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in Gideon v. Wainwright, 372 U.S. 335 (1963)." Drake v. I.N.S., 330 F.3d 600, 605 (3d Cir. 2003). Second, the Court "suggested but expressly chose not to define, an exception in 'rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own.'" Id. (quoting Daniels, 532 U.S. at 383).

In this case, Petitioner's 2001 state court conviction is "no longer open to direct or collateral attack in its own right."[4] Further, his ineffective assistance of counsel claim does not fall within either exception articulated by Daniels. He does not claim that he lacked counsel in his state court proceedings or that "no channel of review" was available to him to contest those convictions. Accordingly, even if this Court had used Petitioner's state court conviction to enhance his sentence, he still cannot challenge his federal sentence by attacking the validity of his state court conviction.

### 2. Counsel's Alleged Failure to Advise Petitioner of His Rights under 21 U.S.C. § 851(b)

Second, Petitioner asserts that his trial counsel was ineffective for failing to advise him that the Court was required to inform him of his right to challenge his state court convictions at sentencing. (Doc. No. 175 at 5.) Specifically, he claims:

> Had counsel informed petitioner of said right, he would have done so and said prior convictions almost certainly would have been invalidated on insufficiency of

---

[4] In 2001, Petitioner pled guilty to criminal conspiracy in the Delaware County Court of Common Pleas. He did not appeal his conviction or seek relief in federal court pursuant to 28 U.S.C. § 2254. The case is currently marked closed. Comm. v. Suggs, Crim. Docket No. CP-23-CR-0005047-2000 (Del. Cty. Ct. Com. Pl. filed January 22, 2001).

10

> the evidence/ineffective assistance of counsel grounds. More importantly, said
> priors could not have been used to enhance petitioner's sentence.

(Id.) Again, Petitioner claims he should be resentenced within the range of 60 to 78 months without describing how he calculated it. (Id. at 15.) To support his assertion, Petitioner relies on 21 U.S.C. § 851(b), which provides:

> If the United States Attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

Contrary to Petitioner's contention, 21 U.S.C. § 851(b) does not apply here because the Government did not file an information with the Court that sought to enhance his sentence due to prior convictions. Section 851(a)(1) provides that "[n]o person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before a plea of guilty, the United States Attorney files an information with the court . . . stating in writing the previous convictions relied upon." 21 U.S.C. § 851(a)(1). If the Government files an information seeking a sentencing enhancement based on prior convictions, § 851(b) then requires the Court to ask whether the defendant affirms or denies the prior convictions, and "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b).

Here, the parties stipulated to a term of imprisonment that was 48 months below the recommended range under the federal Sentencing Guidelines. (Doc. No. 118.) At no point in the proceedings did the Government attempt to enhance Petitioner's sentence based on his prior

11

conviction or file an information pursuant to § 851(a)(1). Accordingly, 21 U.S.C. § 851(b) does not apply in this case and there was no need for trial counsel to advise Petitioner of his § 851(b) rights. Further, as noted above, Petitioner's state court conviction did not actually enhance his sentence. Accordingly, Petitioner was not prejudiced by trial counsel's failure to refer him to the provisions of § 851(b). Thus, both ineffective assistance of counsel claims lack merit.

### B. Petitioner's Claims are Time-Barred

There is another reason why Petitioner's § 2255 Motion will be denied—it was untimely filed. A petitioner must file a § 2255 motion within one year from "the date on which the judgment of conviction becomes final." § 2255(f)(1). In the Third Circuit, a "judgment of conviction becomes final" within the meaning of § 2255 "on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires." Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999). Where, as in this case, a defendant does not file a notice of appeal in the district court, "his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired." Id. In a criminal case, a defendant has fourteen (14) days to file a Notice of Appeal. Fed. R. App. P 4(b)(1)(A).

Here, the Court entered final judgment on July 22, 2015. (Doc. No. 139.) Petitioner did not appeal his conviction or sentencing to the Court of Appeals. As a result, the judgment of conviction became final and the one-year statute of limitations began to run fourteen (14) days later, or on August 5, 2015. Thus, Petitioner had until August 5, 2016 to file a timely motion under § 2255. But as noted previously, Petitioner did not file the instant § 2255 Motion until

December 15, 2016, nearly six months after the expiration of the one-year period. (Doc. No. 175.)

Petitioner acknowledges his failure to comply with the one-year statute of limitations, but contends that the Court should override the one-year period and reach the merits of his Motion because "his actual innocence of the sentence imposed allows him through the gateway of an otherwise procedurally defaulted claim." (Doc. No. 175 at 12.) In particular, he argues that this Court should have sentenced him to a lesser term of imprisonment because he is actually innocent of the state court conviction that was relied on by his probation officer in calculating the sentencing guidelines in the presentence report. (Id. at 12-15.)

The Supreme Court has explained that AEDPA's statute of limitations is not jurisdictional and "does not set forth 'an inflexible rule requiring dismissal whenever' its 'clock has run.'" Holland v. Florida, 530 U.S. 631, 645 (2010) (quoting Day v. McDonough, 547 U.S. 198, 205 (2006)). Rather, the statute of limitations is subject to equitable tolling when "principles of equity would make the rigid application of a limitation period unfair." Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998). Generally, a petitioner seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. United States v. Johnson, 734 Fed. App'x. 153, 159 (3d Cir. 2018) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

13

Moreover, the Supreme Court has recognized other equitable ways that would override AEDPA's statute of limitations.[5] Specifically, the Supreme Court has held that a petitioner's "credible" and "compelling" claim of actual innocence may prove a "gateway" through procedural barriers to federal habeas relief under 28 U.S.C. § 2254. See Schlup v. Delo, 513 U.S. 298, 324 (1995) (successive petitions); House v. Bell, 547 U.S. 518, 521-22 (2006) (state procedural claims).

In 2013, the United States Supreme Court held that a state petitioner's claim of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). In other words, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits" notwithstanding the expiration of the statute of limitations. Id. at 392. The Supreme Court cautioned, however, that a successful actual innocence plea is rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. at 386 (quoting Schlup, 513 U.S. at 327).

Here, Petitioner has not met his burden of presenting evidence to show his actual innocence of the one state court conviction used by the Probation Officer in calculating his criminal history score. To establish actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. 298, 327

---

[5] In McQuiggin v. Perkins, the Supreme Court explained that there is a distinction between equitable tolling, where a petitioner seeks an extension of the prescribed statutory period to file a motion, and an equitable exception, where a petitioner seeks to override the statute of limitations. 569 U.S. 383, 391-91 (2013) (citing Rivas v. Fletcher, 687 F.3d 514, 547 n.2 (2d Cir. 2012)).

14

(1995). Further, he "must present new, reliable evidence that was not presented at trial." Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010). In Reeves v. Fayette SCI, the Third Circuit addressed what constitutes "new evidence" for the purposes of an actual innocence claim based on ineffective assistance of counsel. 897 F.3d 154 (3d Cir. 2018). There, the Court of Appeals noted that "[w]hen a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for the purposes of . . . actual innocence . . . ." Id. at 164.

In this case, the § 2255 Motion is devoid of any evidence, either newly-discovered or which could have been presented in state court, that would demonstrate Petitioner's actual innocence of his state court convictions. Throughout the § 2255 Motion, he repeatedly claims that insufficient evidence supported his state court convictions (Id. at 4-5, 13-15), and that had his federal trial counsel investigated them, "said prior convictions almost certainly would have been invalidated on insufficiency of the evidence/ineffective assistance of counsel grounds." (Id. at 5.) But Petitioner has not provided a shred of evidence to support this assertion. (Id. at 4-5, 13-15.) He neither proffers any new evidence nor advances any argument to demonstrate "that it is more likely than not that no reasonable juror would have convicted him." See Schlup, 513 U.S. 298, 327 (1995). Accordingly, Petitioner has not met his burden to show that his actual innocence of his state court convictions should be used to override AEDPA's one-year statute of limitations. Thus, the Court will deny the § 2255 Motion for the additional reason that it is time-barred.

### C. Certificate of Appealability

Finally, a certificate of appealability will not be issued. A federal district court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a court denies a habeas petition without reaching the underlying constitutional claims, the petitioner must demonstrate that reasonable jurists would find it debatable (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural rule. Id. If the district court properly invokes a plain procedural bar to dispose of a case, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Id. Here, Petitioner's § 2255 Motion is time-barred. In addition, there is no debatable constitutional claim here. Based on the reasons articulated supra, the Court is convinced that reasonable jurists would agree with these conclusions. Moreover, Petitioner's other claims also are without merit. Consequently, Petitioner has failed to make a reasonable showing of the denial of a constitutional right, and the Court will not issue a certificate of appealability.

### V. CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's Petition for Habeas Corpus (Doc. No 175.) An appropriate Order follows.